**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**ROBERT C.,**[1]

      **Plaintiff,**

                            **Case No. 1:22-cv-5103**
     **v.**                        **Magistrate Judge Norah McCann King**

**MARTIN O'MALLEY,**
**Commissioner of Social Security,**

      **Defendant.**


## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Robert C. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On November 29, 2018, Plaintiff filed his application for benefits, alleging that he has been disabled since December 10, 2016. R. 121, 137, 293–94. The application was denied initially and upon reconsideration. R. 171–76, 178–80. Plaintiff sought a *de novo* hearing before

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Martin O'Malley, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

an administrative law judge ("ALJ"). R. 181–82. ALJ Trina Moore held a hearing on November 16, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 45–71. In a decision dated October 26, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from December 10, 2016, Plaintiff's alleged disability onset date, through June 30, 2020, the date on which Plaintiff was last insured for benefits. R. 141–56 ("the 2020 decision"). The Appeals Council granted Plaintiff's request for review, vacated the 2020 decision, and remanded the matter to the ALJ:

- In issuing the decision, the agency proffer procedures were not properly followed. When proffering evidence, the Administrative Law Judge will send a letter to the claimant and appointed representative, if any, that provides a time limit to object to, comment on, or refute the proffered evidence, and to submit a written statement as to the facts and law that the claimant believes apply to the case in light of the evidence submitted (HALLEX I-2-7-30 A). Here, the Administrative Law Judge held a hearing on November 16, 2020. On October 20, 2021, the hearing office proffered post-hearing documents (Exhibits 14B, 15B, 17E, 10F, 11F) to the claimant's representative (Exhibit 18E). The proffer notice provided 10 days to respond (Exhibit 18E, page 2). The Administrative Law Judge, however, issued the unfavorable decision on October 26, 2021. This was prior to the expiration of the 10-day response period given to the claimant's representative in the proffer notice (Exhibit 18E, page 2). Thus, remand is warranted in order to give the claimant an opportunity to respond to the proffered evidence.

Upon remand, the Administrative Law Judge will:

- Obtain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512).

- Give further consideration to the claimant's maximum residual functional capacity during the relevant period and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Ruling 85-16 and 96-8p).

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The

hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

In compliance with the above, the Administrative Law Judge will offer the claimant an opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision.

R. 163–64.

On remand, the ALJ held a hearing on April 20, 2022, at which Plaintiff, who was again represented by counsel, again testified, as did a vocational expert. R. 72–103. In a decision dated April 29, 2022, the ALJ again concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from December 10, 2016, Plaintiff's alleged disability onset date, through June 30, 2022, the date on which Plaintiff was last insured for benefits. R. 11–29. That decision became final when the Appeals Council declined review on July 19, 2022. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 20, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 14.[3] On March 21, 2023, the case was reassigned to the undersigned. ECF No. 15. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an

expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f).

If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    THE 2022 DECISION AND APPELLATE ISSUES

Plaintiff was 45 years old on June 30, 2020, the date on which he was last insured. R. 28. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between December 10, 2016, his alleged disability onset date, and his date last insured. R. 14.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: lumbar degenerative disc disease, cervical degenerative disc disease, thoracic compression fractures, bilateral carpal tunnel syndrome, obesity, anxiety disorder, depressive disorder, and post concussive disorder. R. *Id*. The ALJ also found that Plaintiff's headaches and asthma were not severe. R. 15.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 15–19.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 19–28. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as an exterminator, delivery driver, forklift operator, and stock clerk. R. 28.

8

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as a price worker, an electrical assembler, and a housekeeper—existed in the national economy and could be performed by Plaintiff. R. 28–29. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from December 10, 2016, his alleged disability onset date, through June 30, 2020, his date last insured. R. 29

Plaintiff disagrees with the ALJ's findings at steps two and four and complains that the ALJ improperly considered evidence to which Plaintiff had objected. Plaintiff asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 7; *Plaintiff's Reply Brief*, ECF No. 13. The Commissioner takes the position that his decision should be affirmed in its entirety because the decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 11.

## IV.    DISCUSSION

### A.    Step Two

Plaintiff complains that the ALJ improperly found his post-concussive syndrome to be non-severe at step two of the sequential evaluation. *Plaintiff's Brief*, ECF No. 7, pp. 16–17. Plaintiff is mistaken. The ALJ expressly found Plaintiff's post-concussive disorder, among other impairments, to be severe at step two. R. 14. Plaintiff appears to abandon his challenge to step two after the Commissioner's response brief points out this error. *See Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 11, p. 6; *see generally Plaintiff's Reply Brief*, ECF

No. 13. Accordingly, based on this record, the Court finds that the ALJ's findings at step two will not serve as a basis to remand this action.

### B.    Mental Impairments and the RFC

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination because that determination was inconsistent with the ALJ's own psychiatric review technique ("PRT") findings, which were also flawed. *Plaintiff's Memorandum of Law*, ECF No. 7, pp. 17–18. For the reasons that follow, Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer*, 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he can occasionally climbing ramps, stairs, balancing, stooping, kneeling and crouching. Never climbing ladders, ropes, scaffolds or crawling. Frequently handling and fingering bilaterally. No operation of foot controls bilaterally. No working in direct sunlight. Avoiding concentrated exposure to loud noise. Avoiding all exposure to hazards such as unprotected heights and moving mechanical parts. *Retains the ability to carry out simple routine tasks on a continuous basis with simple instructions and simple work-related decisions. Occasional interaction with co-workers, supervisors and no customer service work. No work in tandem, no assembly line or production rate pace work. Able to tolerate occasional changes in the work setting or work processes.*

R. 19 (emphasis added). In making this determination, the ALJ detailed years of record evidence addressing Plaintiff's mental impairments,[4] including, *inter alia*, Plaintiff's hearing testimony that he had sustained injuries in a motor vehicle accident on his alleged disability onset date of December 10, 2016, and that he has, among other issues, difficulty completing tasks and concentrating, and that he transitions from crying to angry to not wanting to talk to anyone; evidence that Plaintiff took an anti-depressant, Pristique, from January 2014 into June 2017; that, during a March 2017 examination, Plaintiff was diagnosed with post concussive syndrome and that his memory for delayed recall was impaired, but that his concentration and attention were intact; that additional testing in June 2017 revealed mild problems in expression, social communication, and moderate problems in reading, written expression and processing; that additional testing revealed recent memory deficits in the moderate range and immediate memory deficits in the severe range; evidence that Plaintiff had undergone 13 sessions of cognitive remediation prior to discharge on January 8, 2018; that although Plaintiff had not returned to his prior level of functioning after treatment, he had made improvement in all areas and it was noted

---

[4] To the extent that Plaintiff challenges opinion evidence regarding his physical limitations and the RFC, the Court addresses those challenges in the next section of the discussion.

in July 2017 that his attention span was normal; evidence that Lawrence Mintzer, Ph.D., had

performed a consultative examination on May 28, 2019, which revealed, *inter alia*, that

Plaintiff's concentration and memory were good, his attention was intact, his social judgment

was fair, and his insight was good; evidence that Plaintiff's physicians had modified the type and

dosage of his anti-depressant medication and Plaintiff's testimony that his medication is

somewhat helpful; the fact that Plaintiff had not been referred to a mental health professional, to

a higher level of care, or had undergone treatment in hospital emergency rooms for episodes of

decompensation and that he had responded well to cognitive rehabilitation. R. 20, 23–25. In the

view of this Court, this record contains substantial evidence to support the ALJ's RFC

determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at

429.

Plaintiff, however, argues that substantial evidence does not support the ALJ's RFC

determination because the RFC was inconsistent with the ALJ's own PRT findings, which he

contends are also flawed. *Plaintiff's Memorandum of Law*, ECF No. 7, pp. 17–18. Plaintiff first

argues that the ALJ erred in finding no limitations in Plaintiff's ability to understand, remember,

and apply information, and to interact with others, and mild limitations in his ability to

concentrate, persist, or maintain pace, and in adapting and managing himself. *Id*. at 17

(contending further that, "at the very least, the record supports a finding of mild limitation in the

claimant's ability to understand, remember, and apply information and interact with others"). *Id*.

Again, Plaintiff has misstated the ALJ's findings. Specifically, the ALJ found at step three, when

considering the paragraph B criteria of Listings 12.02, 12.04, and 12.06, that Plaintiff had

moderate limitations in all four broad areas of functioning. R. 16–18. Accordingly, the Court

rejects Plaintiff's argument to the extent that he contends that the ALJ erred in her PRT at step

12

three because the ALJ purportedly found no or only mild limitations in these mental areas of functioning.

Similarly unavailing is Plaintiff's assertion that "the RFC does not accurately reflect the acknowledged limitation in his ability to concentrate, persist, or maintain pace as the RFC *only* focuses on his *physical* limitations." *Plaintiff's Memorandum of Law*, ECF No. 7, p. 18 (emphasis added). Once more, Plaintiff misstates the ALJ's finding. As detailed above, the RFC specifically addressed Plaintiff's mental impairments by expressly including limitations "to carry out simple routine tasks on a continuous basis with simple instructions and simple work-related decisions"; "[o]ccasional interaction with co-workers, supervisors and no customer service work" with "[n]o work in tandem, no assembly line or production rate pace work"; and only "occasional changes in the work setting or work processes." R. 19. Plaintiff has not explained— nor can the Court discern—any error with the sufficiency of these RFC limitations. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 211 (3d Cir. 2019) ("[A]s long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'"); *Menkes v. Astrue*, 262 F. App'x 410, 412–13 (3d Cir. 2008) ("The term 'simple routine tasks,' in the context of the disability proceedings, generally refers to the non-exertional or mental aspects of work. For example, performing a 'simple routine task' typically involves low stress level work that does not require maintaining sustained concentration."); *VanLoan v. Kijakazi*, No. 1:21-CV-1916, 2022 WL 9496227, at *12 (M.D. Pa. Oct. 14, 2022) ("VanLoan asserts that the ALJ limited him to occasional interaction with supervisors, coworkers, and the public, and that this limitation did not account for what the ALJ found to be a moderate limitation in interacting with others. However, we have found an ALJ's limitation of a claimant to occasional interaction with others sufficient

13

to account for a moderate limitation in this area of social functioning.") (citations omitted); *Stancavage v. Saul*, 469 F. Supp. 3d 311, 340–41 (M.D. Pa. 2020) (finding that a limitation to routine, repetitive tasks not requiring detailed instructions or more than occasional contact with others accounted for moderate limitations in adapting and managing self).

Finally, Plaintiff argues that, because the ALJ found a "mild" limitation in Plaintiff's ability to concentrate, persist, and maintain pace, he "has cognitive deficits" that "require[e] time off task or having absenteeism due to his mental impairments [that] should have been accounted for in the RFC." *Plaintiff's Memorandum of Law*, ECF No. 7, p. 18. This Court disagrees. As this Court has already explained, Plaintiff is mistaken when he asserts that the ALJ found a "mild" limitation in this area of functioning; rather, the ALJ specifically found that Plaintiff was moderately limited in his ability to concentrate, persist, or maintain pace. R. 18. However, Plaintiff points to no record evidence supporting his conclusory assertion that this moderate limitation requires time off task or absences from work. *See Plaintiff's Memorandum of Law*, ECF No. 7, p. 18; *see also Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (finding that an ALJ need include only "credibly established" limitations). In any event, for the reasons discussed above, the ALJ sufficiently accommodated Plaintiff's moderate limitation in his ability to concentrate, persist, or maintain pace.

In short, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does her PRT findings.

C.      **Opinion Evidence**

Plaintiff also challenges the ALJ's consideration of multiple medical opinions. *Plaintiff's Memorandum of Law*, ECF No. 7, pp. 18–22; *Plaintiff's Reply Brief*, ECF No. 13, pp. 1–2. For the reasons that follow, Plaintiff's arguments are not well taken.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer*, 186 F.3d at 433; *Cotter*, 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett*, 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[5] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical

---

[5] As previously noted, Plaintiff's claim was filed on November 29, 2018.

sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The applicable regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1).  As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The applicable regulation further requires the ALJ to articulate her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b). As

previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors.").

Plaintiff challenges the ALJ's consideration of several medical opinions, which the Court addresses in turn.

### 1.    Barry Gleimer, D.O.

During a June 21, 2017, physical examination, Barry Gleimer, D.O., Plaintiff's treating physician, reported the following objective findings:

> Tinel sign is locally positive at both wrists, but without radiation. Spurling sign and straight leg raising maneuvers elicit radicular pain to upper and lower extremities, respectively – unchanged. Spinal motion remains limited to the thoracolumbar spine at 70% of normal with cervical motion still limited to 80% of normal. Radicular pain is noted on straight leg raise and slump maneuver to the right side. Exam is otherwise unchanged.

R. 479 (Exhibit 4F/9) ("June 2017 opinion"). Dr. Gleimer went on to conclude as follows:

> The patient, in my opinion, *is disabled from return to active employment*. He has multilevel disc injury in his neck, mid, and low back. He has radiculopathy/nerve injury of both peripheral and spinal nerves. He will require further treatment inclusive of pain management – which is currently under the care and direction of Dr. Kalliny. We will see him back in the next month to six weeks for reevaluation.

*Id*. (emphasis added).

On December 20, 2017, Dr. Gleimer conducted another examination of Plaintiff, during which he noted Plaintiff's subjective reports that his condition had improved with an injection, but that "pain still continues. There is neck pain radiating down his upper extremities, low back

17

pain, and lower extremity radiation somewhat more to the right." R. 472 (Exhibit 4F/2)

("December 2017 opinion"). Upon physical examination, Dr. Gleimer noted the following

findings:

> On exam SLR and slump maneuver is still positive but decreased in acuity. His
> lumbar motion is 80% normal. Cervical motion is 80% of normal as well. Spurling
> sign does produce interscapular radiation, which is present bilaterally. DTRs are
> grossly intact. Tinel and Durkan signs remain positive to both wrists, although the
> patient notes hand paresthesias are intermittent and not acute currently.

*Id.* Dr. Gleimer assessed cervical, thoracic, and lumbar strain/sprain; bulging cervical, thoracic,

and lumbar discs with protrusion at T7-T8; and cervical and lumbar radiculopathy/radiculitis

with concurrent entrapment neuropathy bilaterally. *Id.* The doctor recommended that Plaintiff

follow up with another physician for pain management and continue with home exercise; he

stated that Plaintiff "*may proceed with light to sedentary employment*." *Id.* (emphasis added).

Turning first to Dr. Gleimer's December 2017 opinion, the ALJ specifically considered

this opinion when crafting the RFC and found it to be partially persuasive, reasoning as follows:

> Dr. Gleimer concluded on December 20, 2017, that the claimant could perform
> light to sedentary employment when considering his spinal impairments (Exhibit
> 4F, 2).
>
> The undersigned finds the opinion of Dr. Gleimer to be partially persuasive (Exhibit
> 4[F], 2). The undersigned finds that his opinion that the claimant could perform
> light to sedentary work to be supported by his examination findings (Exhibit 4F).
> The undersigned finds that his opinion that the claimant could perform sedentary
> work to be not persuasive. The undersigned finds that the claimant had a normal
> gait, full strength in his lower extremities, he could heel, and toe walk and squat
> but had a positive straight leg raise test on the right only and reduced range of
> motion in the lumbar spine upon Dr. Sarmiento's examination (Exhibit 9F,7). He
> was able to get on and off the examination table unassisted, he could dress himself
> and could transition from supine to a sitting position unaided (Exhibit 9F, 3). At the
> time of his examination, he was taking over the counter pain medication, not
> engaging in physical therapy or undergoing injections or other palliative treatment.
> The remainder of the opinion is found to be persuasive as it is consistent with the
> conclusions above for the reasons stated above.

R. 27. Earlier in her step four analysis, the ALJ also considered years of record evidence, including, *inter alia*, that "physical examinations otherwise revealed no significant abnormalities and the claimant generally presented with a normal gait and station, ambulated normally without any assistive devices, was able to get on and off the examination table and was able to rise from a seated position, heel walk, and squat without difficulty[,]" R. 21, 23; Plaintiff's "motor strength was graded 5/5 in all muscle groups, deep tendon reflexes were full and symmetric in the lower and upper extremities, bilaterally[,]" R. 21; that Dr. Gleimer provided Plaintiff with wrist splints for his left hand in February 2018, for his carpal tunnel syndrome and advised that, if Plaintiff did not improve, he would require surgery, but that "the record does not document any abnormal physical examination findings or reflect any observations indicating the claimant's carpal tunnel syndrome or cervical radiculopathy symptoms resulted in asymmetry or atrophy of musculature, dislocation, decreased and/or reduced grip or pinch strength, spasms, stiffness, tremors and/or other otherwise affected his ability to perform fine and gross manipulative activities with the bilateral upper extremities[,]" *id*.; that treatment of Plaintiff's neck, mid and lower back, and radicular pain symptoms was limited to conservative therapies, *e.g.*, physical therapy treatment, epidural injections, pain management and over-the-counter nonsteroidal anti-inflammatory drugs ("NSAIDs"), R. 22; that "the evidence of record reflects the claimant had not returned or been seen by his orthopedist since late 2017 and it does not appear that the claimant's symptoms have progressed or worsened to an extent that the claimant experienced neurological deficits that would require further evaluation by a specialist or surgical consultation[,]" *id*.; and that Plaintiff "did not report experiencing any claudication or edema of the lower extremities, orthopnea, paroxysmal nocturnal dyspnea, shortness of breath, syncope as well as there was no evidence of secondarily impaired respiratory or cardiovascular functioning on physical examination[,]" R.

19

23. The ALJ specifically explained that he "also considered the claimant's weakness in his upper extremities, decreased range of motion with forward elevation and abduction of the shoulder, bilaterally on physical examination and EMG findings, identifying cervical radiculitis and bilateral carpal tunnel syndrome in assessing his residual functional capacity" and that the RFC "provides [that] the claimant can frequently handle and finger with the bilateral upper extremities. As a precaution, the residual functional capacity further provides the claimant avoid all exposure to hazards such as unprotected heights or moving mechanical parts." R. 22. The ALJ therefore concluded that "the limitation to the light exertional level, and additional postural and environmental limitations adopted herein, adequately accommodates the claimant's physical limitations." R. 23. The ALJ's discussion of the record evidence provides substantial support for her consideration of Dr. Gleimer's December 2017 opinion. *See Jennifer M. v. Comm'r of Soc. Sec.*, No. CV 22-0713 (MAS), 2023 WL 2601754, at *4 (D.N.J. Mar. 22, 2023) (finding that "the ALJ properly discussed the supportability and consistency of" a medical opinion where the ALJ specifically found that the opined limitations were inconsistent with the record as a whole, including, *inter alia*, the physician opined that "Plaintiff could not twist, stoop, or crouch, however, physical examinations 'were essentially normal with a normal gait, and intact sensation and motor testing in the upper extremities'") (citations omitted); *Crossley v. Kijakazi*, No. 3:20-CV-02298, 2021 WL 6197783, at *11 (M.D. Pa. Dec. 31, 2021) (finding that the ALJ properly evaluated opinions regarding exertional limitations where the ALJ considered, *inter alia*, physical examinations that routinely noted the claimant to have normal range of motion, no tenderness, normal strength, no tremor, no cranial nerve deficit, and normal gait and coordination); *cf. Johnson v. Comm'r of Soc. Sec.*, 263 F. App'x 199, 203 (3d Cir. 2008) (rejecting the claimant's challenge to the RFC that the Plaintiff "retains the residual functional

capacity to lift and carry up to twenty pounds occasionally and ten pounds frequently, sit for six hours and stand and/or walk for two hours in an eight hour workday, and occasionally climb stairs, balance, kneel, crouch, crawl or stoop" where, *inter alia*, it was noted that the claimant "did not use a cane or crutches, was able to dress and undress herself, was not uncomfortable while seated, experienced no motor abnormality, and had normal range of motion in her shoulders, elbows, forearms, wrists, hips, knees, and ankles" and the Plaintiff reported that she "could take care of her personal needs, drive her car, and walk two blocks before resting" and, during examination, "she could dress and undress without assistance, get on and off the examination table without difficulty, successfully toe-and-heel walk, and demonstrate full range of motion"); *Serrano v. Kijakazi*, No. CV 20-3985, 2021 WL 4477137, at *3–4 (E.D. Pa. Sept. 30, 2021) ("In this case, the ALJ discussed and analyzed the evidence extensively before determining the persuasiveness of the medical opinions. . . . The ALJ was not required to repeat this information for the sake of elaborating on her findings of persuasiveness.").

Plaintiff, however, challenges the ALJ's consideration of Dr. Gleimer's December 2017 opinion, emphasizing the doctor's reference to sedentary work. *Plaintiff's Memorandum of Law*, ECF No. 7, p. 21. Plaintiff first contends that "*Dr. Gleimer determined* that the claimant had neck pain radiating down his upper extremities, low back pain, and lower extremity radiation somewhat more to the right." *Id*. (emphasis added). However, as detailed above, this statement simply reflects Dr. Gleimer's memorialization of Plaintiff's subjective complaints. R. 472. Notably, the mere memorialization of a claimant's subjective complaints in a medical record does not transform those complaints into objective findings or a medical opinion. *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 879 (3d Cir. 2005) ("[A] medical source does not transform the claimant's subjective complaints into objective findings simply by recording

them in his narrative report[.]") (summarizing *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir.

1996)); *Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) ("[T]he mere

memorialization of a claimant's subjective statements in a medical report does not elevate those

statements to a medical opinion.") (citations omitted); *Famularo v. Comm'r of Soc. Sec.*, No. CV

20-1655, 2021 WL 613832, at *7 (D.N.J. Feb. 17, 2021) ("[A] a claimant's own subjective

report about her symptoms[] does not become a medical opinion by virtue of being recorded in

treatment notes.") (citations omitted). Moreover, as discussed in more detail below, the ALJ

properly discounted the intensity, persistence, and limiting effects of Plaintiff's subjective

symptoms.

      To the extent that Plaintiff suggests that the ALJ's consideration of Dr. Gleimer's

December 2017 opinion is defective because this physician, as a "longtime treating specialist of

record[,] gives him the unique 'longitudinal understanding' of the claimant's condition that lends

credence to his findings[,]" *Plaintiff's Memorandum of Law*, ECF No. 7, p. 21 (citing 20 C.F.R.

§ 404.1520c(c)(3)(i), (ii)), that argument is not well taken. For the reasons already discussed, the

ALJ properly considered the supportability and consistency of Dr. Gleimer's December 2017

opinion. R. 27; *see* 20 C.F.R. § 404.1520c(1)−(2). Although the ALJ did not expressly discuss

Dr. Gleimer's specialty or the length of his treating relationship with Plaintiff, the ALJ

specifically discussed Dr. Gleimer's opinion and treatment records, R. 21 (citing Exhibit 4F/1, R.

471), 27 (citing Exhibit 4F/2, 9, R. 472, 479), which reflect, *inter alia*, this physician's

credentials—a  doctor of osteopathic medicine, a Fellow of the American Academy of

Orthopaedic Surgeons, and a recipient of an award given to physicians who are Fellows of the

American Osteopathic Academy of Sports Medicine—during the time that he was treating

Plaintiff. In any event, any failure by the ALJ to expressly discuss these factors does not require

remand where, as here, a comprehensive review of the record provides substantial support for the ALJ's evaluation of this treating provider's December 2017 opinion. *See* 20 C.F.R. § 404.1520c(b)(2) (explaining that the factors of supportability and consistency "are the most important factors" and that an ALJ "may, but [is] not required to, explain how" he considered other regulatory factors, including relationship with the claimant, specialization, and other factors); *Jarrett v. Kijakazi*, No. CV 21-1607, 2021 WL 6136936, at *5 (E.D. Pa. Dec. 29, 2021) (finding that the ALJ "satisfied" his regulatory duties when he "explained that the treatment records were only partly consistent with and supportive of" the medical opinion because an ALJ "must only explicitly discuss the two most important factors: consistency and supportability").

Turning next to Dr. Gleimer's June 2017 opinion, the ALJ expressly stated that he did not evaluate the persuasiveness of that opinion, which included a conclusion regarding whether Plaintiff is able to perform regular and continuing work, *see* R. 479 (opining that Plaintiff "is disabled from return to prior active employment"), because that issue is reserved to the Commissioner. R. 27 ("The opinions of Drs. Gleimer, Cataldo, and Greenberg have not been evaluated for persuasiveness as they are issues reserved to the Commissioner regarding their separate conclusions regarding whether the claimant is able to perform regular and continuing work (20 CFR 404.1520b(c)(3)). (Exhibits 1F [R. 428–31], 3F [R. 462–70] and 4F,9 [R. 479])."). The ALJ did not err in this regard. *See* 20 C.F.R. § 404.1520b(c)(3)(i); *Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 118 (3d Cir. 2020) ("Whether or not Louis can perform occupational duties is a legal determination reserved for the Commissioner.") (citing 20 C.F.R. § 404.1527(d)). Such opinions are "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(3)(i); *see also Ubaldini v. Comm'r Soc. Sec.*, No. 22-2686, 2023 WL 7001840, at *3 (3d Cir. Oct. 24, 2023) ("The ALJ correctly rejected as unpersuasive Dr. Chao's and Dr.

23

McFadden's 'disabled' and 'temporarily disabled' opinions because that determination is reserved to the Commissioner."); *cf. Zonak v. Comm'r of Soc. Sec.*, 290 F. App'x 493, 497 (3d Cir. 2008) ("[T]he ALJ was not obligated to give significant weight to Dr. Kumar's opinion as to Zonak's ability to work because the opinion related to the ultimate issue of disability—an issue reserved exclusively to the Commissioner.").

Plaintiff, however, challenges the ALJ's statement that she did not evaluate the opinion for persuasiveness because, "in direct conflict with that statement, the ALJ in the preceding paragraph made clear that she found the opinion of Dr. Gleimer to be at least partially persuasive. (R. 27)." *Plaintiff's Reply Brief*, ECF No. 13, p. 2. Plaintiff's argument—which conflates Dr. Gleimer's June 2017 opinion and the doctor's December 2017 opinion into a single opinion—misses the mark. As detailed above, the ALJ's discussion makes clear that she properly found Dr. Gleimer's December 2017 opinion partially persuasive and that she did not evaluate the persuasiveness of that physician's June 2017 opinion because it addressed an issue reserved to the Commissioner. R. 27 (citing, *inter alia*, Exhibit 4F/2, 9).

In short, the ALJ's consideration of Dr. Gleimer's opinions enjoys substantial support in the record.

### 2.    Lawrence Mintzer, Ph.D.

On May 28, 2019, Lawrence Mintzer, Ph.D., conducted a consultative psychological examination of Plaintiff on behalf of the state agency. R. 680–84 (Exhibit 8F). Plaintiff came alone and drove himself to the appointment. R. 680. Plaintiff reported that he had stopped working as an exterminator in December 2016 because he was going to start another job, but that before he was able to start the new job, he was involved in a motor vehicle accident. *Id*. Plaintiff further reported short-term memory loss; not wanting to be around others or in crowds;

depression; anxiety; and anger issues. R. 680–81. Dr. Mintzer noted that Plaintiff had previously been in treatment with a psychologist (whose name Plaintiff could not recall) for two or three months, until approximately February 2019, and had seen a psychologist for a couple of months seven or eight years prior to that time, but was not currently in any mental health treatment. R. 681. Plaintiff was taking Viibryd at the time of the evaluation. *Id.* Dr. Mintzer noted Plaintiff's activities of daily living:

> Mr. C[.] does only a small amount of the cleaning at his home because "That's all I can do. I can't get down on my hands and knees." Mr. C[.] doesn't do any of the cooking because "We eat one meal a day." Mr. C[.] goes grocery shopping with his mother. He never goes grocery shopping by himself. Mr. C[.] usually does not get along too well with other people. He is not involved in any group activities. He doesn't get together with any friends. He doesn't see any other family members. Mr. C[.]'s mother pays his bills. Mr. C[.], to an extent, keeps up with his grooming and hygiene. On a typical day Mr. C[.] and his mother "grab a bit to eat." He noted that he and his mother go to places at times when there aren't going to be many people there because of his anxiety when he is around people. He said that he is usually in his room, where he tries to read. He said that he tries to "keep away from the problems in my head."

*Id.* Upon mental status examination, Dr. Mintzer found as follows:

> Mr. C[.] was oriented to person, place, and time. He was casually dressed and adequately groomed. He is of average height and he is somewhat overweight. His motor activity was appropriate and relaxed. His speech was within normal limits. Mr. C[.] seemed depressed. His affect was mildly constricted. Mr. C[.] has never experienced either auditory or visual hallucinations.
>
> *Mr. C[.]'s thought processes were goal-directed, and his speech was coherent. There were no indications of any delusional thoughts.* Mr. C[.] gets suicidal thoughts a few times each week. Mr. C[.] has never made a suicide attempt. There were not indications of any homicidal thoughts. Mr. C[.] does not experience any ideas of reference. *Mr. C[.] has a fear of being in crowds.* He has a fear of driving.
>
> *Mr. C[.]'s abstract thinking is good.* His fund of general knowledge is fairly good. His capacity to perform simple calculations is good. *Mr. C[.]'s concentration was good*; for instance, he performed serial sevens with average speed, making no errors while doing them. He was able to correctly spell the word "world" both forwards and backwards. Mr. C[.]'s intelligence is estimated to be in the average range.

> *Mr. C[.]'s remote memory is good. His recent memory is fairly good*; for example, he was able to recall two out of three items after one minute and again after five minutes. He was able to recall what he had eaten for dinner on the evening prior to my meeting with him. *Mr. C[.]'s immediate retention and recall are good*; for instance, he was able to repeat seven digits forward and four digits in reverse. Mr. C[.]'s impulse control is somewhat poor; for instance, sometimes when he gets angry he throws or breaks things. Mr. C[.]'s social judgment is fair. His insight is good. He seems to be a reliable informant.

R. 682 (emphasis added). Dr. Mintzer diagnosed major depressive disorder, single episode, severe; mild neurocognitive disorder due to a traumatic brain injury; panic disorder; and social anxiety disorder. *Id*. In assessing the severity of Plaintiff's condition, Dr. Mintzer opined that Plaintiff "has an illness that is expected to last for the next 12 months. Mr. C[.]'s limitations are caused by a combination of physical health problems, psychological problems, and a mild cognitive impairment. Overall, Mr. C[.]'s limitations are moderate to severe in degree." R. 682–83. Plaintiff's prognosis "appears to be guarded." R. 683. Plaintiff "is able to manage his personal funds in a competent manner, should benefits be awarded." *Id*.

At step four of the sequential evaluation process, the ALJ specifically considered Dr. Mintzer's examination findings and opinion, as follows:

> Lawrence Mintzer, Ph.D., performed a consultative examination on May 28, 2019 (Exhibit 8F, 1-5). The claimant reported experiencing severe depression and that he was very anxious. He had sustained a concussion, but his cognitive function was returning but slowly.[] He socially isolated himself. He had flashbacks of being hit by another vehicle while driving. He did not want to be around others and crowds were unbelievable. He could not stand crowds of more than five people. He complained about short term memory loss. He reported anger issues when he would argue and scream. He had seen a psychologist in approximately 2011 or 2012 for a couple of months and he treated with a psychologist between November 2018 and February 2019. He had no other professional mental health treatment and his medications included Viibryd. He accompanied his mother shopping. He did not prepare meals because he consumed one meal per day. He did not get along with others. He did not see family members. His mother paid his bills. He could keep up his grooming. He was usually in his room where he tried to read. Upon examination, his mood was depressed with a mildly constricted affect. His motor activity was appropriate and relaxed. He was adequately groomed. His concentration was good,

and his attention was intact. His memory was good. He had fair social judgment and good insight. He was diagnosed with major depressive disorder, mild neurocognitive disorder due to traumatic brain injury, panic disorder and social anxiety disorder.

R. 24 (citation to footnote and footnote omitted). The ALJ went on to find as follows:

Dr. Mintzer concluded on May 28, 2019, that the claimant's mental impairments were moderate to severe in degree, but he had a mild cognitive impairment (Exhibit 8F, 4).

The undersigned finds Dr. Mintzer's opinion to be partially persuasive (Exhibit 8F, 4). The undersigned finds that his opinion is supported by his examination findings (Exhibit 8F). His opinion that the claimant has a mild cognitive impairment and that his limitations are severe in degree is not consistent with other medical evidence of record. The undersigned refers to the discussion in Finding 4 above supporting a conclusion that the claimant's mental functioning is limited to a moderate extent for the reasons provided there. The undersigned finds that the remainder of the opinion to be consistent with the medical record as a whole, as described in Finding 4 above.

R. 26. The Court finds no error with the ALJ's consideration in this regard. *See* R. 23 (noting that The March 2017 examination reflected that Plaintiff's memory for delayed recall was impaired, but that his concentration and attention were intact; that additional testing in June 2017 revealed mild problems in expression and social communication, and moderate problems in reading, written expression and processing), 24 (noting that additional testing revealed recent memory deficits in the moderate range and immediate memory deficits in the severe range; that Plaintiff had undergone 13 sessions of cognitive remediation prior to discharge on January 8, 2018; that, although Plaintiff had not returned to his prior level of functioning after treatment, he had made improvement in all areas; that Plaintiff's attention span was characterized as normal in July 2017), 25 (noting that Plaintiff's medication and dosage had been modified; that there was minimal mental health treatment and that Plaintiff had been managing his impairments with medication, which he testified was somewhat helpful; that he had quit his last job due to financial disputes; and that Plaintiff had not been referred to a mental health professional or to a

higher level of care, nor had he undergone treatment in hospital emergency rooms for episodes of decompensation and that he had responded well to cognitive rehabilitation); *see also* 20 C.F.R. § 404.1520c(c)(1)–(2); *Hess*, 931 F.3d at 211; *Menkes*, 262 F. App'x at 412–13; *VanLoan*, 2022 WL 9496227, at *12; *Stancavage*, 469 F. Supp. 3d at 340–41.

In challenging the ALJ's consideration of Dr. Mintzer's opinion, Plaintiff argues that the ALJ "did not provide any meaningful discussion in how she considered" this physician's findings and that the ALJ's "failure to explain how these critical findings and opinions were considered leaves unclear to subsequent reviewers whether this probative evidence was discounted or simply ignored altogether." *Plaintiff's Memorandum of Law*, ECF No. 7, p. 21 (providing no citation to the record or to case authority). To the contrary, and as detailed above, the ALJ's thorough recitation of Dr. Mintzer's findings and opinion permits meaningful review by this Court. R. 24, 26. Moreover, Plaintiff simply points to Dr. Mintzer's examination findings without explaining why the ALJ's error, if indeed any error occurred, worked to his prejudice. *See Plaintiff's Memorandum of Law*, ECF No. 7, p. 21; *see also Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Atkins v. Comm'r Soc. Sec.*, 810 F. App'x 122, 129 (3d Cir. 2020) ("Lacking any direction from [the claimant] as to the specific [evidence] at issue, we will not scour the record to attempt to discern [the claimant's] position."); *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently instructed parties that they bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the

evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments.").In short, Plaintiff has not persuaded the Court that remand on this basis is warranted.

### 3.    State agency reviewing consultants

M. Rosalie McMaster, Ph.D., conducted an initial review of Plaintiff's medical record on behalf of the state agency on June 13, 2019. R. 104–20. Dr. McMaster found, *inter alia*, that Plaintiff had moderate limitations in the areas of understanding, remembering, or applying information; interacting with others; and in concentrating, persisting, or maintaining pace, but only a mild limitation in adapting or managing himself. R. 112. Dr. McMaster also opined that Plaintiff was "[c]apable of occasional contact with gp [general public], co-workers, supervisors[.]" R. 117. Dr. McMaster found no adaptive limitations. R. 117.

Jane Shapiro, Ph.D., reviewed Plaintiff's medical record upon reconsideration for the state agency on September 6, 2019. R. 122–37. Dr. Shapiro agreed with Dr. McMaster that, *inter alia*, Plaintiff was moderately limited in his ability to understand, remember, or apply information; interact with others; and concentrate, persist, or maintain pace. R. 128. However, Dr. Shapiro found that Plaintiff was also moderately limited in his ability to adapt or manage himself. *Id*. Dr. Shapiro agreed with Dr. McMaster that Plaintiff was "[c]apable of occasional contact with gp [general public], co-workers, supervisors." R. 133. Dr. Shapiro went on to find further that Plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting and the doctor opined that Plaintiff "can adapt to occasional changes in the workplace." R. 134.

In crafting the RFC at step four, the ALJ considered these opinions as follows:

The State agency psychological consultant [upon initial review, Dr. McMaster] concluded that the claimant has a moderate limitation in his ability to understand, remember or apply information, interact with others, concentrate, persist or maintain pace and a mild limitation in his ability to adapt or manage himself (Exhibit 1A). He was capable of occasional contact with co-workers, supervisors and the general public.

The undersigned finds the opinions of the State agency psychological consultant to be *partially persuasive* (Exhibit 1A). The undersigned finds that the opinion is supported by the State agency medical consultant's evaluations at the time the opinion was formed. The undersigned finds that *the opinion that the claimant had a mild limitation in his ability to adapt and manage himself and he was capable of occasional interaction with the general public is not consistent with other medical evidence of record as the claimant reported continuing social isolation, problems with anger, and an inability to get along with family members* (Exhibit 8F). Further, he reported ongoing problems with stress and changes in routine, which were not considered by the State agency psychological consultant. The undersigned finds the remainder of the opinion to be persuasive as discussed above in Finding 4 for the reasons noted there.

The State agency psychological consultant [upon reconsideration, Dr. Shapiro] concluded that the claimant has a moderate limitation in his ability to understand, remember or apply information, interact with others, concentrate, persist or maintain pace and in his ability to adapt or manage himself (Exhibit 3A). He was capable of occasional contact with co-workers, supervisors and the general public.

The undersigned finds the opinion of the State agency psychological consultant to be partially persuasive (Exhibit 3A). The undersigned finds that the opinion is supported by the State agency medical consultant's evaluations at the time the opinion was formed. The undersigned finds that *the opinion that the claimant was capable of occasional interaction with the general public is not consistent with other medical evidence of record as the claimant reported continuing social isolation, problems with anger, and an inability to get along with family members* (Exhibit 8F). The undersigned finds the remainder of the opinion to be persuasive as discussed above in Finding 4 for the reasons noted there.

R. 25–26 (emphasis added). In other words, the ALJ found most of these opinions to be persuasive and, to the extent that she did not, she found more limitations in Plaintiff's favor: *i.e.,* she found a greater limitation in Plaintiff's ability to adapt or manage himself than did Dr. McMaster, who opined only a mild limitation in this area, and the ALJ found a greater limitation in Plaintiff's ability to have contact with the general public than did both state agency

psychologists, who opined that Plaintiff could have occasional contact with the general public. *Id*. Notably, the ALJ accommodated these limitations in the RFC by, *inter alia*, requiring no customer service work and no work in tandem and the ALJ restricted Plaintiff to only occasional changes in the work setting or work processes. R. 19. Substantial evidence supports the ALJ's consideration in this regard. R. 20, 23–25; *see also* 20 C.F.R. § 404.1520c(c)(1)–(2).

However, Plaintiff argues that the ALJ's consideration of the state agency psychologists' opinions was "unsupported by substantial evidence" and "inconsistent with the totality of the medical evidence." *Plaintiff's Memorandum of Law*, ECF No. 7, pp. 21. According to Plaintiff, both these consultants opined that Plaintiff "was only capable of occasional contact with the general public, co-workers, and supervisors" and had "limitations in understanding and memory, sustained concentration, persistence, and interaction with others." *Id*. Plaintiff states that Dr. Shapiro found that Plaintiff was "moderately limited in his ability to respond appropriately to changes in the work setting," *id*. at 22, and insists that the opinions of both consultants are consistent with each other and with other record evidence, contrary to the ALJ's characterization. *Id*.

Plaintiff's arguments are not well taken. Plaintiff again misstates the ALJ's discussion when he states that the ALJ rejected these opinions, including the opinions that Plaintiff was moderately limited in his ability to to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage himself. R. 25–26. As detailed above, the ALJ found persuasive these consultants' opinion that Plaintiff's limitations in these areas were moderate. *Id*. The only portion of these opinions that the ALJ found unpersuasive was in connection with Plaintiff's ability to "occasionally" interact with the general public; the ALJ actually determined that the evidence required an even greater limitation in this

area than did the state agency consultants. *Id*. As previously explained, the ALJ accommodated these limitations in the RFC, R. 19 (restricting Plaintiff to, *inter alia*, no customer service work and no work in tandem and restricting Plaintiff to only occasional changes in the work setting or work processes), restrictions that Plaintiff does not challenge. *See Plaintiff's Memorandum of Law*, ECF No. 7, pp. 21–22. Accordingly, Plaintiff's argument based on his mistaken reading of the ALJ's consideration of the state agency psychological consultants does not require remand of this action.

### 4.    Ralph Cataldo, D.O., and Samuel Sarmiento, M.D.

In a challenge raised for the first time in his reply brief, Plaintiff addresses the ALJ's consideration of the opinions of Ralph Cataldo, D.O., and Samuel Sarmiento, M.D. *Plaintiff's Reply Brief*, ECF No. 13, pp. 1–2. Although the Court need not address arguments raised for the first time in a reply brief, *see United States v. Kolodesh*, 787 F.3d 224, 230 n.3 (3d Cir. 2015) ("In support of the arguments raised in his opening brief, Kolodesh raises several new contentions in his reply brief. Those are waived and we do not address them further."); *United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir.2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal."); *Wright v. Comm'r of Soc. Sec.*, No. CV 15-6217, 2016 WL 5429649, at *5 (D.N.J. Sept. 27, 2016) (refusing to consider newly-raised argument in the reply brief and citing *Aiellos v. Zisa*, No. 09-3076, 2009 WL 3486301, at *1 (D.N.J. Oct. 20, 2009) ("It is hornbook law that arguments raised for the first time in a reply brief are waived[.]")), the Court will nevertheless consider Plaintiff's arguments.

As to Dr. Cataldo, Plaintiff simply asserts "[o]f note[,] she [the ALJ] did not mention the opinion of Dr. Cataldo or at all discuss his findings." *Plaintiff's Reply Brief*, ECF No. 13, p. 2.

32

The ALJ explained that she did not consider Dr. Cataldo's opinion because it addressed whether Plaintiff was able to perform regular and continuing work, an issue reserved to the Commissioner. R. 27 (citing, *inter alia*, Exhibit 3F, R. 462–69, containing Dr. Cataldo's opinion); *see also* R. 462 (reflecting that Dr. Cataldo examined Plaintiff on December 21, 2017, for injuries sustained during the course of his employment and that it is "submitted for workers' compensation purposes only and is not to be used for any other purpose"), 468–69 (opining as to percentages of Plaintiff's alleged "permanent disabilities"). As explained above, the ALJ did not err in this regard. *See* 20 C.F.R. § 404.1520b(c)(3)(i); *Louis*, 808 F. App'x at 118, and that such opinions are "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(3)(i); *see also Ubaldini*, 2023 WL 7001840, at *3; *cf. Zonak*, 290 F. App'x at 497. In short, Plaintiff's belated, conclusory assertion regarding Dr. Cataldo will not serve as a basis for remand.

Plaintiff also belatedly challenges the ALJ's consideration of Dr. Sarmiento's opinion, arguing that the ALJ improperly found this opinion to be persuasive. *Plaintiff's Reply Brief*, ECF No. 13, pp. 1–2 (citing R. 27, 670[6]). Plaintiff's argument is not well taken.

On May 29, 2019, Dr. Sarmiento conducted a consultative orthopedic evaluation of Plaintiff. R. 685–92.

> Examination of the upper extremities showed no evidence of joint deformity or instability. The upper extremities revealed no warmth. *Shoulders showed decreased range of motion in forward elevation at 100 degrees bilaterally and abduction at 100 degrees bilaterally.* There was no significant tenderness to direct palpation of the right or left upper extremities. Biceps, triceps, and brachioradialis deep tendon reflexes were 2+ bilaterally symmetric. There was decreased sensation to touch and pinprick on the right arm. Pinch strength and grip strength were 5/5 bilaterally. Muscle strength of the upper extremities, including the biceps and triceps, were graded at 5/5 bilaterally. The claimant was able to extend the fingers, make a fist, and oppose the thumbs bilaterally.

---

[6] Plaintiff cites in apparent error to R. 670, which is actually a record from Dr. Gleimer. Plaintiff may have intended to cite to R. 689.

R. 687 (emphasis added). Dr. Sarmiento went on to summarize and conclude as follows:

**SUMMARY**
The claimant is a 44-year-old male who is not in any distress. *He has decreased mobility of both shoulders in forward elevation and abduction*. He has decreased sensation to touch and pinprick on the right arm. He was able to handle fine and gross manipulation, including the handling of fine and small objects. Grip strength and pinch strength was 5/5 and equal bilaterally. He has decreased mobility of both hips in abduction and the right ankle in dorsiflexion and plantar flexion. He also has decreased sensation to touch and pinprick on the right leg. He ambulated well without the use of any handheld devices.

**CONCLUSION**
The claimant has decreased mobility of his neck and low back. He would be able to walk and stand for a reasonable amount of time with needed breaks. He would be able to sit for a reasonable amount [of] time with needed breaks. No significant balance limitations were observed during the evaluation. *He has good use of his upper extremities for movements such as reaching.* He has good functionality of his right and left hands. He would be able to handle fine and small sized objects. He has no significant limitations to fingering such as picking and pinching objects.

R. 689 (emphasis added).

At step four of the sequential evaluation, the ALJ expressly considered Dr. Sarmiento's

opinion as follows:

Dr. Sarmiento concluded on May 29, 2019, that the claimant would be able to walk and stand for a reasonable amount of time with needed breaks (Exhibit 9F, 5 [R. 689]). He would be able to sit for a reasonable amount time with needed breaks. No significant balance limitations were observed during the evaluation. *He has good use of his upper extremities for movements such as reaching.* He has good functionality of his right and left hands. He would be able to handle fine and small sized objects. He has no significant limitations to fingering such as picking and pinching objects.

The undersigned finds Dr. Sarmiento's opinion to be persuasive (Exhibit 9F, 5). *The undersigned finds that his opinion is supported by his examination findings.* The undersigned finds that his limitations are consistent with other medical evidence of record as discussed above.

R. 27 (emphasis added).

Plaintiff argues that the ALJ erred when characterizing Dr. Sarmiento's opinion as

supported by his examination findings and thus persuasive. *Plaintiff's Reply Brief*, ECF No. 13,

pp. 1–2. Plaintiff specifically argues that Dr. Sarmiento's examination findings did not, in fact, support his opinion because "the doctor found significant deficits in ranges of motion in the bilateral shoulders both with forward elevation and abduction, yet he went on to conclude that the Plaintiff has 'good use of his upper extremities for movements such as reaching.' (R. 670 [sic])." *Id.* at 2. According to Plaintiff, the ALJ's "reliance upon this opinion on the basis that it is supported by his examination findings is obviously flawed" and "contains no discussion explaining away this inconsistency in the doctor's opinion or her acceptance of the same." *Id.*

The Court is not persuaded that this issue requires remand. As a preliminary matter, although Dr. Sarmiento found decreased mobility of Plaintiff's shoulders in forward elevation and abduction, the doctor nevertheless concluded that Plaintiff still retained "good use of his upper extremities for movements such as reaching" despite that decreased mobility. R. 687, 689. In attacking this opinion of a medical professional, Plaintiff simply relies on his own lay reading of the medical evidence and engages in rank speculation. *See Plaintiff's Reply Brief*, ECF No. 13, pp. 1–2. Notably, Plaintiff does not point to any medical record or opinion that reflects a limitation in his ability to reach. *See id.*; *cf. McIntyre v. Berryhill*, No. CV 17-2176, 2018 WL 5962476, at *5 (D.N.J. Nov. 13, 2018) ("It must be remembered, however, that to be fit for work, a claimant need not be pain-free or symptom-free.") (citing *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986)). As previously discussed, an ALJ need include only "credibly established" limitations in the RFC. *Rutherford*, 399 F.3d at 554; *see also Grella v. Colvin*, No. 3:12-CV-02115-GBC, 2014 WL 4437640, at *18 (M.D. Pa. Sept. 9, 2014) ("[T]he ALJ cannot accommodate limitations which do not exist, or which cannot be found in the medical record. No specific functional limitations were provided by any of Plaintiff's medical sources with respect to her carpal tunnel syndrome[.]") (internal citation and quotation marks omitted). In any event,

even if the ALJ erred in finding this aspect of Dr. Sarmiento's opinion supported by that physician's examination findings, Plaintiff has not explained how any such error harmed him or how this error would result in a different RFC or in a finding that Plaintiff was disabled. *See Plaintiff's Reply Brief*, ECF No. 13, pp. 1–2; *see also Shinseki*, 556 U.S. at 409–10; *Padgett*, 2018 WL 1399307, at *2.

At bottom, for all these reasons, the ALJ's consideration of the opinions of Dr. Gleimer, Dr. Mintzer, Dr. McMaster, Dr. Shapiro, Dr. Cataldo, and Dr. Sarmiento enjoys substantial support in the record.

### D.    Subjective Statements

Plaintiff also challenges the ALJ's consideration of his subjective complaints, arguing that the record supports those complaints. *Plaintiff's Memorandum of Law*, ECF No. 7, pp. 22–26; *Plaintiff's Reply Brief*, ECF No. 13, pp. 2–4. Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit

36

an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 20. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely

consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id*. As previously discussed, the ALJ detailed years of medical evidence and record testimony to support her findings. R. 20–27. In doing so, the ALJ explained how she credited some of Plaintiff's complaints and accommodated them in the RFC, but she also specifically explained why evidence of, *inter alia*, normal or benign findings did not completely support his claims regarding the intensity, persistence and limiting effects of his symptoms:

> While the record described instances, in which the claimant's cervical and thoracolumbar motion was limited, restricted, and guarded, grip strength was decreased, bilaterally, Tinel's and Phalen's maneuver and his straight-leg raise were symptomatic and/or positive on provocative testing, *the record is insufficient to support the extent of limitations alleged or preclude work at the light exertional level.* (See Exhibits 3F/6, 6- 7; 5F/6;7F/16, 18, 20 & 9F/3-4).

> *For example, physical examinations otherwise revealed no significant abnormalities and the claimant generally presented with a normal gait and station, ambulated normally without any assistive devices, was able to get on and off the examination table and was able to rise from a seated position, heel walk, and squat without difficulty.* (Exhibits 5F/6, 16, 26; 7F/16 & 9F/3, 4). *In addition, the claimant's motor strength was graded 5/5 in all muscle groups, deep tendon reflexes were full and symmetric in the lower and upper extremities, bilaterally.* (Exhibits 2F/3; 5F/6, 16; 6F/1-2, 7, 29; 7F/16, 19, 26, & 9F/3-4). Barry Gleimer, D.O., provided the claimant with wrist splints for his left hand on February 14, 2018, for his carpal tunnel syndrome informing him that if he did not improve, he would require surgery (Exhibit 4F, 1). However, *the record does not document any abnormal physical examination findings or reflect any observations indicating the claimant's carpal tunnel syndrome or cervical radiculopathy symptoms resulted in asymmetry or atrophy of musculature, dislocation, decreased and/or reduced grip or pinch strength, spasms, stiffness, tremors and/or other otherwise affected his ability to perform fine and gross manipulative activities with the bilateral upper extremities*. (Exhibit 9F/3).

R. 21 (emphasis added).

> Moreover, on occasions when the claimant sought treatment for his neck, mid and lower back and radicular pain symptoms during this period, *such treatment was limited to conservative therapies*, e.g., physical therapy treatment, epidural injections, pain management and over-the-counter nonsteroidal anti-inflammatory drugs (NSAIDs). (See Exhibits 5F/7-9; 6F/35-36, 39-40, 41-42, 43-44, 54-55; 9F/2 & Hearing Testimony). Furthermore, *the evidence of record reflects the claimant had not returned or been seen by his orthopedist since late 2017 and it does not*

*appear that the claimant's symptoms have progressed or worsened to an extent that the claimant experienced neurological deficits that would require further evaluation by a specialist or surgical consultation.* (See Exhibit 9F/2). *Given these relatively normal findings, the objective evidence suggests the claimant's symptoms are not as limiting as alleged and undermine his allegations of work-related restrictions. Nevertheless, the undersigned considered the frequency and intensity of the claimant's neck, lower back and radicular pain symptoms extending down the right lower extremity, weakness in his bilateral lower extremities and statements that his pain symptoms are aggravated or intensified with bending, turning, standing, and walking.* (Exhibits 4E; 2F/1 & Hearing Testimony).

Therefore, the residual functional capacity includes a restriction to a full range of work at the light exertional level[.] . . .

*Although the claimant may have experienced greater functional limitations than might have been expected from his other physical impairments, the record does not support additional limitations that would preclude work at the light exertional level.* For example, as previously discussed herein, *physical examinations otherwise revealed no significant abnormalities* and the claimant generally presented with a normal gait and station, ambulated normally without any assistive devices, was able to get on and off the examination table and was able to rise from a seated position, heel walk, and squat without difficulty. (Exhibits 5F/6, 16, 26; 7F/16 & 9F/3, 4). Moreover, *the claimant did not report experiencing any claudication or edema of the lower extremities, orthopnea, paroxysmal nocturnal dyspnea, shortness of breath, syncope as well as there was no evidence of secondarily impaired respiratory or cardiovascular functioning on physical examination.* (Exhibit 9F/3-4). Accordingly, *the undersigned finds the limitation to the light exertional level and additional postural and environmental limitations adopted herein, adequately accommodates the claimant's physical limitations.*

R. 22–23 (emphasis added).

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported. The record supports that the claimant is capable of light work with the frequently handling and fingering limitations based on the mild/moderate carpal tunnel syndrome. The claimant has not undergone any surgical procedures for any of his severe impairments. The claimant's mental impairments are severe although there is minimal mental health treatment, and he is managing the impairments with medication that he testified is somewhat helpful. He has never been hospitalized for any mental condition and he quit his last job due to financial disputes. He testified that he experiences memory loss.

R. 25. In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *See Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Plaintiff, however, argues that the ALJ's discounting of his subjective complaints was improper because those complaints "comport" with his mother's third-party statement and with "the very great weight of treating medical evidence." *Plaintiff's Memorandum of Law*, ECF No. 7, p. 25. Plaintiff offers no citation to the record or accompanying explanation as to how the evidence "comports" with his subjective complaints. *See id. See Claxton*, 766 F.3d at 307; *Atkins*, 810 F. App'x at 129; *cf. Wright v. Comm'r Soc. Sec.*, 783 F. App'x 243, 245 (3d Cir. 2019) ("We need not address this conclusory, undeveloped accusation.") (citations omitted).[7] In any event, this Court has already noted that the ALJ credited Plaintiff's subjective statements as to his limitations in the area of social interaction, particularly with the public—which the ALJ found more restrictive than those found by the state agency psychological consultants—and other moderate mental limitations, which she accommodated in the RFC through restricting Plaintiff to, *inter alia*, carrying out simple routine tasks on a continuous basis with simple instructions and simple work-related decisions; only occasional interaction with co-workers, supervisors and no customer service work, work in tandem, or assembly line or production rate pace work; and only occasional changes in the work setting or work processes. R. 19, 25–26. Plaintiff has not explained why these—and other limitations in the RFC—fail to accommodate any specific

---

[7] Plaintiff asserts for the first time in his reply that "the ALJ found that the Plaintiff's statements indicated more significant limitations than she believed were supported by the record. (R. 20)." *Plaintiff's Reply Brief*, ECF No. 13, p. 2. However, this purported finding by the ALJ does not appear on the page cited by Plaintiff. *See* R. 20.

symptoms that he claims flow from his impairments. *See generally Plaintiff's Memorandum of Law*, ECF No. 7, pp. 22–26; *Plaintiff's Reply Brief*, ECF No. 13, pp. 2–4.

For the first time in his reply, Plaintiff also points to evidence in the record that he believes supports his "statements of disabling limitation[,]" which are otherwise unidentified. *Plaintiff's Reply Brief*, ECF No. 13, pp. 3–4 (citations to the record omitted). This argument will not serve as a basis for remand pf the action. Plaintiff simply points to record evidence with no accompanying explanation as to how or why this evidence supports his subjective statements. *See id.*; *see also Shinseki*, 556 U.S. at 409–10; *Padgett*, 2018 WL 1399307, at *2. Plaintiff points to several medical diagnoses, *Plaintiff's Reply Brief*, ECF No. 13, pp. 3–4, but he offers no explanation how such diagnoses—many of which the ALJ acknowledged were severe impairments, *i.e.*, degenerative disc disease; obesity; depressive disorder; anxiety disorder, R. 14—support the intensity, persistence, or limiting effects of his subjective symptoms. *See id.*; *cf. Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) ("Notably, "[a] diagnosis alone . . . does not demonstrate disability.") (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). In any event, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence

standard].");  *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

For all these reasons, the Court concludes that the ALJ sufficiently explained her reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints will not serve as a basis for remand of this action. *Id.*

### E.    Third-Party Statement

Plaintiff challenges the ALJ's consideration of a third-party report authored by Plaintiff's mother. *Plaintiff's Memorandum of Law*, ECF No. 7, pp. 22–26; *Plaintiff's Reply Brief*, ECF No. 13, pp. 2–4. The Court is not persuaded.

As an initial matter, an ALJ is not required to articulate how she considered evidence offered by a non-medical source. *S.A. v. Comm'r of Soc. Sec.*, No. CV 23-465, 2023 WL 8447921, at *3 (D.N.J. Dec. 6, 2023) ("The ALJ was not required to articulate how he considered the evidence offered by Plaintiff's mother.") (citing 20 C.F.R. § 404.1520c(d)).

The ALJ in the present case nevertheless considered Plaintiff's mother's statement at step four:

> Furthermore, the undersigned considered the Third-Party Function Report completed by the claimant's mother, Peggy C[.], in support of his application for disability benefits under the guidelines in SSR 16-3p evaluating the persuasiveness of her opinion (Exhibit 5E). While third party statements can generally be helpful in making findings regarding the claimant's ability to complete activities of daily living: maintain, concentration, attention, and pace: engage in social activities: and adapt and manage oneself, an articulation on how such evidence was considered in terms of persuasiveness is not required under the current rules governing opinion evidence. (20 CFR 404.1520c(d)). This report and accompanying notations were evaluated for consistency, as applicable to the reports of any lay witness in a claim for Social Security disability benefits. (20 CFR 404.1502(e)). Review of this report demonstrates that Ms. C[.]'s notations mirror many of the same allegations made by the claimant that he has experienced limitations in physical functioning and disruption of his daily living activities due to his physical and mental impairments. However, in terms of the claimant's physical functional limitations, this statement is somewhat inconsistent with the objective findings set forth above and other medical opinions discussed herein. Specifically, Ms. C[.]'s notations are consistent with the generally benign physical examination finding including Dr. Samuel Sarmiento's findings at Exhibit 9F, noting the claimant generally presented with a normal gait, ambulated normally without any assistive devices, and further noting the claimant's motor strength was graded 5/5 in all muscle groups, deep tendon reflexes were full and symmetric in the lower and upper extremities, bilaterally. (Exhibits 2F/3; 5F/6, 16, 26; 6F/1-2, 7, 29; 7F/16, 19, 26, & 9F/3-4).

R. 27–28.

Plaintiff complains, first, that although the ALJ found Plaintiff's mother's statements to be somewhat inconsistent with the objective findings regarding her son's physical limitations, she made no mention of his mother's statements regarding his mental impairments. *Plaintiff's Memorandum of Law*, ECF No. 7, p. 24. Plaintiff specifically points to his mother statement that Plaintiff "'cannot do much,' that he needs reminders to take his medication, that he never prepares food or meals, that he cannot really enjoy anything, that he is anti-social since his accident, and that it is 'hard' for him to handle stress and changes in routine at times." *Id*. However, Plaintiff has not persuaded the Court that this issue requires remand. Plaintiff has not explained why the RFC does not accommodate any limitation that Plaintiff believes flows from

these mental issues, nor does Plaintiff identify any additional functional limitations not already included in the RFC. *See Plaintiff's Memorandum of Law*, ECF No. 7, pp. 24–25; *see also* R. 19 (restricting Plaintiff to, *inter alia*, carrying out simple routine tasks on a continuous basis with simple instructions and simple work-related decisions; occasional interaction with co-workers, supervisors, no customer service work, work in tandem, or assembly line or production rate pace work; and only occasional changes in the work setting or work processes). Plaintiff, who bears the burden at step four, *see Smith*, 631 F.3d at 634, simply has not established reversible error in the ALJ's consideration of Plaintiff's mother's subjective statements regarding his mental impairments. *See Shinseki*, 556 U.S. at 409–10.

Plaintiff also alleges error in that the ALJ, despite acknowledging that the statements of Plaintiff and his mother mirrored each other, she nevertheless characterized those statements, as they relate to Plaintiff's physical functional limitations, somewhat inconsistent with the record evidence. *Plaintiff's Memorandum of Law*, ECF No. 7, p. 24; *Plaintiff's Reply Brief*, ECF No. 13, p. 2. However, as this Court has already explained, the ALJ properly discounted the intensity, persistence, or limiting effects of Plaintiff's own subjective symptoms.

Plaintiff goes on to challenge the ALJ's consideration of his mother's statements by arguing, for the first time in his reply, that such consideration is flawed because the ALJ found on the one hand that such statements mirrored Plaintiff's subjective statements yet also found on the other hand that such statements were consistent with Dr. Sarmiento's "benign" physical findings. *Plaintiff's Reply Brief*, ECF No. 13, pp. 2–3 ("How can Ms. C[.]'s statements be consistent with the seriously disabling limitation by the Plaintiff while also being consistent with Dr. Sarmiento's benign examination findings? It cannot be both."); *see also Kolodesh*, 787 F.3d at 230 n.3; *Pelullo*, 399 F.3d at 222; *Wright*, 2016 WL 5429649, at *5. The Court is not

44

persuaded. To the extent that his mother's statements regarding Plaintiff's physical symptoms were consistent with generally benign physical examination findings, including Dr. Sarmiento's findings, those statements were consistent with the limitations in the ALJ's RFC and for the reasons explained by the ALJ. R. 19–28. As this Court has already noted, Plaintiff has not identified any additional or different RFC limitations flowing from Plaintiff's alleged symptoms or from his impairments. In short, the Court concludes that the ALJ's consideration of Plaintiff's mother's third-party statement does not warrant remand.

### F.    Disputed Evidence

Finally, Plaintiff complains that the ALJ improperly considered evidence to which he had properly objected. *Plaintiff's Memorandum of Law*, ECF No. 7, pp. 26–27 (citing, *inter alia*, 20 C.F.R. § 404.1519j); *Plaintiff's Reply Brief*, ECF No. 13, p. 1 (same). Plaintiff specifically complains that the ALJ improperly rejected his counsel's objection during the administrative hearing that the ALJ should not consider the opinion of Ross Greenberg, D.O., because it was prepared in connection with Plaintiff's workers' compensation claim. *Id*. This argument is not well taken.

The regulation upon which Plaintiff relies in making this argument, 20 C.F.R. § 404.1519j, provides in pertinent part that a claimant (or claimant's representative) may object to a medical source designated to perform a consultative examination, including where that medical source previously represented an interest adverse to the claimant:

> Objections to the medical source designated to perform the consultative examination.
>
> You or your representative may object to your being examined by a medical source we have designated to perform a consultative examination. If there is a good reason for the objection, we will schedule the examination with another medical source. A good reason may be that the medical source we designated had previously represented an interest adverse to you. For example, the medical source may have

represented your employer in a workers' compensation case or may have been involved in an insurance claim or legal action adverse to you. . . .

*Id*. As relevant to the present action, the record includes an October 22, 2012, letter to an attorney regarding Dr. Greenberg's October 15, 2012, evaluation of Plaintiff in connection with Plaintiff's workers' compensation claim. R. 428–31. During the administrative hearing conducted on April 20, 2022, Plaintiff's counsel objected to Dr. Greenberg's letter because, *inter alia*, "Dr. Greenberg's report was directly [sic] to a worker's compensation carrier" and he objected "to the actual report prepared for the adverse party. That's [sic] is the report for the adverse party. It can't be more adverse than that." R. 102 (citing 20 C.F.R. § 404.1519j and asking that this exhibit be "eliminated from the record and from consideration"). The ALJ responded that she could not eliminate Dr. Greenberg's letter from the record and that she would consider this evidence in connection with Appeals Council's remand order. *Id*. In her written decision, the ALJ overruled Plaintiff's counsel's objection to the exhibit, Exhibit 1F, explaining as follows:

> The undersigned overrules the objection by counsel at the April 20, 2022, hearing regarding Dr. Greenberg's examination findings contained in Exhibit 1F, which the representative asked to be struck [sic] from the record (Hearing Recording at 10:49:59). The claimant's representative cited 20 CFR 404.1519j as the basis of his objection. The representative contended that because Dr. Greenberg was involved in the claimant's April 17, 2010, workers' compensation case that the record should be struck [sic] from the instant case. However, 20 CFR 404.1509j indicates that it is to be employed when the agency plans for the claimant to undergo a consultative examination with a source, who had previously been involved in a prior workers' compensation case. There is no evidence that the agency intended or did order a consultative examination with Dr. Greenberg to evaluate his mental functioning in relation to this case. Second, the issue involved in 20 CFR 1519j involves the consultative examiner and his or her findings. In this case, Lawrence Mintzer, Ph.D., performed the consultative examination and he would have been the appropriate object of the objection if he had examined the claimant in relation to the claimant's previous workers' compensation case. But he did not. Because Dr. Greenberg did not function as a prior consultative examiner in this capacity in the instant case, the objection is overruled.

R. 23 n.1; *see also* R. 23 (discussing Dr. Greenberg's examination findings),[8] 27 (explaining that she did not consider the persuasiveness of the opinion of, *inter alios*, Dr. Greenberg regarding whether Plaintiff is able to perform regular and continuing work because that is an issue reserved to the Commissioner).

Plaintiff contends that the ALJ's ruling on his objection "makes no sense and ignores the obvious import of the Regulation[,]" which "is obviously intended to assure that the evidence used by the Commissioner will be impartial or at least seemingly so, to a disability claimant." *Plaintiff's Memorandum of Law*, ECF No. 7, p. 26; *see also Plaintiff's Reply Brief*, ECF No. 13, p. 1. Plaintiff insists that the applicable regulation is intended to assure a claimant that "the Commissioner will not consider evidence from parties adverse to the claimant. To hold otherwise renders the regulation superfluous and a nullity." *Plaintiff's Memorandum of Law*, ECF No. 7, p. 27; *see also Plaintiff's Reply Brief*, ECF No. 13, p. 1 ("But the distinction drawn by the ALJ [that an examination conduced in this action by a workers' compensation physician is objectionable but that the report actually prepared for the adverse party is not objectionable] is trivial as it

---

[8] The ALJ considered Dr. Greenberg's findings as follows:

> Turning to the claimant's mental impairments, the undersigned notes that Ross Greenberg, D.O., examined the claimant on October 22, 2012 [sic] (Exhibit 1F, 1-4).[] The claimant reported in March 2011 that he had treated with mental health professionals "off and on" for a year because of his anxiety. He had most recently treated with a psychiatrist in March 2012. His family physician had recently prescribed Cymbalta, Wellbutrin and Vistaril. He believed the medications were helpful. He had nightmares, which were always the same. He wanted to attend an Eagles or Flyer's game. His presentation was dramatic. He closed his eyes regardless of the subject discussed. His thought processes were scatted and on occasion not goal directed. He exhibited anxiety and depressive symptoms. His memory was intact. His judgment was adequate. Dr. Greenberg found his mental impairments unrelated to the incidents the claimant alleged caused them to occur.

*Id*. (omitting footnote 1 detailed above).

ignores the spirit of the Regulation, which is clearly intended to ensure that the Commissioner does not consider evidence form parties with interests adverse to the claimant."). Plaintiff's arguments are not well taken.

The plain language of the application regulation, 20 C.F.R. § 404.1519j, supports the ALJ's interpretation and expressly limits objections to only medical sources performing consultative examinations in connection with disability claims. *See* 20 C.F.R. § 404.1519j. Moreover, implicit in the regulation is the requirement that a claimant object before a medical source performs the consultative examination so that the agency may consider the objection and, if appropriate, "schedule the [consultative] examination with another medical source." *Id*. In this case, Plaintiff's complaint about Dr. Greenberg arose years after that physician performed the examination, not before Dr. Greenberg conducted it. Nothing in the regulation's plain language supports Plaintiff's broad interpretation that any "evidence from parties with interests adverse to the claimant" are precluded. *See id*. Moreover, although the Court of Appeals for the Third Circuit has not specifically addressed 20 C.F.R. § 404.1519j, its case authority tends to support an ALJ's consideration of evidence from other proceedings, including from workers' compensation proceedings. For example, the Third Circuit has stated that an ALJ "should evaluate the objective medical findings" contained in medical reports generated in connection with a workers' compensation claim just as the ALJ would consider such evidence made in the context of a Social Security disability claim. *Coria v. Heckler*, 750 F.2d 245, 247−48 (3d Cir. 1984) (distinguishing between objective medical findings and "portions of the reports that represent conclusions as to the claimant's disability for purposes of worker's compensation" and stating that "the ALJ should evaluate the objective medical findings set forth in the medical reports for submission with the worker's compensation claim by the same standards that s/he

uses to evaluate medical findings in reports made in the first instance for the Social Security claim, unless there is some reasonable basis to believe a particular report or finding is not entitled to comparable weight"). The ALJ in the case presently before the Court did not contravene this authority: the ALJ noted Dr. Greenberg's examination findings, R. 23, but he did not accept, or even consider, Dr. Greenberg's opinion of disability or non-disability. R. 27. Although Plaintiff argues that consideration of Dr. Greenberg's evaluation violates 20 C.F.R. § 404.1519j, Plaintiff's own reliance on that examination to support his subjective statements undermines his argument. *Plaintiff's Reply Brief*, ECF No. 13, p. 4 ("For example, Dr. Ross Greenberg's exam of the Plaintiff revealed peculiar mannerisms, dramatic presentation, scattered thought processes and on occasional not goal directed. Dr. Greenberg diagnosed disorganization of thinking, anxiety, peculiar mannerisms and dramatic emotional responses caused by characterological/personality issues. (R. 428-431)."). In short, Plaintiff's attempt to have it both ways in this regard belies his assertion that the applicable regulation "obviously" forbids consideration of this evidence.

## V.    CONCLUSION

For all these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  September 9, 2024                          *s/Norah McCann King*
                                                  NORAH McCANN KING
                                                  UNITED STATES MAGISTRATE JUDGE